United States District Court
Southern District of Texas
**ENTERED**
September 23, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JOE SHIELDS, | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 3:19-CV-00390 |
| | § | |
| ELEVEATED ENERGY | § | |
| SOLUTIONS, LLC, ET AL., | § | |
| | § | |
| Defendants. | § | |

## ORDER

This discovery dispute requires me to decide whether Plaintiff Joe Shields ("Shields") should be required to pay a $50.00 fee to obtain documents he has subpoenaed from non-party Inteliquent, Inc. ("Inteliquent"). Although a relatively small amount of money is at stake here, the underlying issue is one that often confounds litigants, non-parties, and courts: when may a non-party shift fees and costs to the party serving a subpoena? Few district courts in the Fifth Circuit have written on this topic. I hope this opinion provides some guidance for those courts having to decide who should be required to shoulder the financial burden of complying with a subpoena directed to a non-party.

## BACKGROUND

In this lawsuit, Shields alleges that the Defendants—various individuals and entities engaged in the business of selling solar power systems—initiated unsolicited and unauthorized telemarketing calls to his phone number in violation of the Telephone Consumer Protection Act and Texas Business and Commerce Code § 305.053.

In August 2020, Shields issued a narrowly tailored subpoena to Inteliquent, a long-distance telecommunications carrier, seeking to obtain the name and contact information for the entity that used two phone numbers to call him on specified dates and times in April and July 2020.  Upon receipt of the subpoena, Inteliquent's counsel sent Shields a lengthy email.   The email explained that Inteliquent is a large provider of wholesale communications services, carrying around one billion minutes of traffic daily.[1]  As a direct result of its vast business operations, Inteliquent routinely receives subpoenas from civil litigants.  According to the email sent to Shields, "the burden of compliance imposed upon Inteliquent is real."[2]  Dkt. 26-1 at 3.  To help defray the costs of complying with these civil subpoenas, Inteliquent has put into place a "civil subpoena processing fee," which varies depending on the quantity of phone numbers for which customer-related information is sought.  *Id.*  "This fee covers all such common costs for the processing of our compliance response to a subpoena seeking customer-identifying information for a quantity of numbers in a matter of civil litigation to which [Inteliquent is] a non-party."  *Id.* at 3–4.  The standard processing fees are as follows:

---

[1] One billion minutes is a lot of minutes.  To put that figure into perspective, one billion minutes amounts to a tad over 1,902 years.

[2] Inteliquent notes that it "receives a disturbing quantity of subpoenas that are at least partially or even entirely erroneous with reference to one or more numbers that are not or have never been in service with our company."  Dkt. 26-1 at 3.

| | |
|---|---|
| - **Tier 1** (1 or 2 numbers): | $50.00 |
| - **Tier 2** (3 to 5 numbers): | $75.00 |
| - **Tier 3** (6 to 9 numbers): | $100.00 |
| - **Tier 4** (10 or more numbers): | Individual Case Basis Fee ("ICB fee"). |

[3]

Inteliquent's letter raises several blanket objections to the subpoena,[4] but readily acknowledges that "upon receipt of the standard processing fee provided for in our civil subpoenas policy ($50.00 – a Tier 1 request), we are willing to withdraw the [objections] and process this subpoena."  Dkt. 26-1 at 5.

Shields strongly objects to paying the $50 processing fee, labelling the charge a "profiteering fee."  Dkt. 26 at 2.  According to Shields, who is representing himself *pro se*, "Inteliquent is attempting to extort money for profiteering purposes from those seeking to identify an entity responsible for the illegal Solar telemarketing calls."  *Id.*

## ANALYSIS

Federal Rule of Civil Procedure 45 governs the issuance of subpoenas to non-parties.  The rule provides that a party may serve a subpoena commanding a non-party "to whom it is directed to . . . produce designated documents, electronically stored information, or tangible things in that person's possession, custody, or control."  FED. R. CIV. P. 45(a)(1)(A)(iii).  A litigant is entitled to use a Rule 45 subpoena to "obtain discovery

---

[3]     Inteliquent,   Civil   Subpoena   Policy   (December   31,   2019), https://www.inteliquent.com/getmedia/ad7784c0-bc44-47b8-8820-d061d6daba00/Civil-Subpoena-Policy-20200101.aspx.

[4] The objections are, in my view, simply placeholders with little, if any, applicability to the present case.  The objections include the standard "unduly burdensome, overly broad, and neither relevant to nor proportional to the needs of the litigation," "attorney client and work product rights against production of privileged information," and "confidential and proprietary information."  Dkt. 26-1 at 3.  Given that all Shields is requesting here is identification of the entity who utilized two phone numbers at very specific dates and times, the objections are without merit.

regarding any non-privileged matter that is relevant to any party's claim or defense."  FED.
R. CIV. P. 26(b)(1).

Our judicial system is based, in part, on the principle that, if properly summoned,
every person has a civic duty to testify regardless of the financial burden imposed by doing
so.  *See Hurtado v. United States*, 410 U.S. 578, 589 (1973) ("It is beyond dispute that
there is in fact a public obligation to provide evidence . . . no matter how financially
burdensome it may be.").  As the United States Supreme Court explained more than a
century ago:

> [T]he giving of testimony and the attendance upon court or grand jury in
> order to testify are public duties which every person within the jurisdiction
> of the government is bound to perform upon being properly summoned, and
> for performance of which he is entitled to no further compensation than that
> which the statutes provide.  The personal sacrifice involved is a part of the
> necessary contribution of the individual to the welfare of the public.  The
> duty, so onerous at times, [is] necessary to the administration of justice
> according to the forms and modes established in our system of government.

*Blair v. United States*, 250 U.S. 273, 281 (1919).  The Fifth Circuit has also acknowledged
the "fundamental responsibility of every person to give testimony," *Garner v.
Wolfinbarger*, 430 F.2d 1093, 1100 (5th Cir. 1970), and "the duty to provide evidence has
long been considered to be almost absolute."  *In re Grand Jury Subpoena Duces Tecum*,
555 F.2d 1306, 1308–09 (5th Cir. 1977).

Because the cost of complying with a subpoena is generally considered part of the
public duty of providing evidence, district courts across the country routinely hold that a
non-party is required to pay its own costs for complying with a Rule 45 subpoena,
especially when those costs are minimal.  *See id.* at 1308 ("As a general rule, a witness or

the recipient of a subpoena duces tecum is required to bear the costs of compliance.");

*Gould v. O'Neal*, No. 17-100 (JMV), 2019 WL 4686991, at *4 (D.N.J. Sept. 26, 2019)

("[A] nonparty responding to a subpoena is typically required to pay its own costs of

production."); *Sakhil Ctr. at Doral Condo. Ass'n v. Hanover. Ins. Co.*, No. 18-21659-Civ-

Scola/Torres, 2019 WL 7881626, at *1 (S.D. Fla. Mar. 21, 2019) ("A nonparty is usually

required to pay its own costs of production, so long as the costs do not represent an undue

burden or expense."); *Miller v. Allstate Fire & Cas. Ins. Co.*, No. 07-260, 2009 WL

700142, at *2 (W.D. Pa. Mar. 17, 2009) (same); *Honda Lease Tr. v. Middlesex Mut.

Assurance. Co.*, No. 3:05-CV-1426(RNC), 2008 WL 349239, at *5 (D. Conn. Feb. 6, 2008)

("Typically, a non-party is required to absorb the costs of complying with a subpoena duces

tecum.") (internal quotation marks and citation omitted).

There is, naturally, a genuine concern that it might be unfair to force a non-party to

incur an enormous financial burden in responding to a subpoena. This is especially true

when the non-party has no real interest in the underlying litigation. To address this

concern, Rule 45(d) provides that there are "two related avenues by which a person subject

to a subpoena may be protected from the costs of compliance." *In re Mod. Plastics Corp.*,

890 F.3d 244, 250 (6th Cir. 2018) (internal quotation marks and citation omitted). First,

the rule gives district courts the authority to assess fees and costs to parties serving

subpoenas as a sanction for failing to take "reasonable steps to avoid imposing undue

burden or expense on a person subject to the subpoena." FED. R. CIV. P. 45(d)(1). Second,

the rule provides that if a district court issues an order compelling compliance with a

subpoena, "the order must protect a person who is neither a party nor a party's officer from

*significant expense* resulting from compliance." FED. R. CIV. P. 45(d)(2)(B)(ii) (emphasis added).

Courts across this great country have had numerous opportunities to address the cost-shifting provision of Rule 45(d)(2)(B)(ii). A number of courts have recognized Rule 45's cost shifting as mandatory upon a finding that the costs incurred are significant. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (If "discovery is ordered against a non-party," and "the subpoena imposes significant expense on the non-party, . . . [then] the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'"); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (Under Rule 45, if a subpoena imposes significant expenses on a non-party, "the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'"). Despite that hardline rule, the determination of whether particular costs are significant is relative and "an expense might be 'significant,' for instance, to a small family-run business, while being 'insignificant' to a global financial institution." *United States v. McGraw-Hill Cos.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014).

Other "[c]ourts have used a balancing approach to examine the equities of each particular case in order to determine how much cost to shift from the non-party to the discovering party." *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397-Marra/Matthewman, 2016 WL 1658765, at *7 (S.D. Fla. Apr. 26, 2016). Those courts consider three factors, "including whether the non-party actually has an interest in the outcome of the case, whether the non-party can more readily bear its cost than the

6

requesting party, and whether the litigation is of public importance." *Sun Cap. Partners*, 2016 WL 1658765, at *7.  *See also DeGeer v. Gillis*, 755 F. Supp. 2d 909, 928 (N.D. Ill. 2010); *Georgia-Pacific LLC v. Am. Int'l Specialty Lines Ins. Co.*, 278 F.R.D. 187, 190 (S.D. Ohio 2010).

This is not a case where the cost of compliance on the non-party is particularly large or excessive—at least with respect to the subpoena at issue.  Far from it.  Here, Inteliquent is simply being asked to access its computer network to determine the identity of the person or entity assigned two phone numbers.  While there might be some costs associated with this task, they are certainly not overwhelming.  At the same time, I fully appreciate that while the cost of reviewing, researching, and responding to this subpoena might not be huge, the expenses are likely to represent a significant sum when a company faces hundreds or thousands of subpoenas.  I do not ascribe any deleterious motives to Inteliquent's desire to charge a standard civil processing fee.  The company simply wants to offset the expense of responding to a growing volume of subpoenas.  That is completely understandable.

But the federal rules do not allow Inteliquent, as a non-party, to force Shields to pay a standard processing fee, no matter how small, as a precondition to obtaining documents for which he has properly issued a subpoena.  Since some costs can be anticipated in complying with any subpoena duces tecum, Rule 45's provision that a trial court must quash a subpoena "if compliance subjects a person to undue burden," FED. R. CIV. P. 45(d)(3)(A)(iv), "must be read to mean that in the main run of cases the cost of compliance will be assumed as part of the public duty of providing evidence." *In re Grand Jury Subpoena Duces Tecum*, 555 F.2d at 1308.  Our judicial system has, in effect, concluded

7

that a non-party must assume some costs if our justice system is to work efficiently and effectively.  *See Matter of Midland Asphalt Corp.*, 616 F. Supp. 223, 225 (W.D.N.Y. 1985) ("Compliance with a subpoena duces tecum ordinarily will result in some inconvenience and costs to the recipient.").  Only when the cost of compliance is significant, or a litigant has failed to take steps to avoid undue burden or expense on a non-party may cost-shifting be appropriate.  As one district court waxed poetic:

> Any witness who is subpoenaed suffers inconvenience.  An individual operating a small business, for example, or a corporation operated by a sole shareholder, may suffer, in like circumstances, more inconvenience than [a major corporation] with its thousands of employees.  But this inconvenience, whether suffered by witnesses, grand jurors, or jurors, is part of the price we pay to secure . . . the enforcement of our laws.

*Application of Radio Corp. of Am.*, 13 F.R.D. 167, 172 (S.D.N.Y. 1952).

When the costs of responding to a Rule 45 subpoena are minimal, the non-party must fulfill its civic responsibilities and bear the cost of compliance.  I, therefore, overrule Inteliquent's objections to the subpoena and order Inteliquent to respond to the subpoena without assessing a fee of any sort on Shields.

SIGNED this __23rd__ day of September, 2020.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

8